UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
LINA AVILES, on behalf of I.R.,                                :
                                                               : **MEMORANDUM**
                                        Plaintiff,             : **DECISION AND ORDER**
                                                               :
            - against -                                        : 15 Civ. 2992 (BMC)
                                                               :
COMMISSIONER OF SOCIAL SECURITY,                               :
                                                               :
                                        Defendant.             :
                                                               :
-------------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff's mother seeks review of a decision of the Commissioner of Social Security denying her application for benefits on behalf of her son I.R. After a hearing on August 7, 2013, at which time plaintiff was 8 years old, an Administrative Law Judge ("ALJ") found that although plaintiff had a severe impairment – attention deficit hyperactivity disorder ("ADHD") – it did not meet nor was it the functional equivalent of the "Listing of Impairments" at 20 C.F.R. §§ 416.924 and 416.926. He therefore found that plaintiff was not disabled. I hold that there was substantial evidence in the record to support this conclusion and therefore grant the Commissioner's motion for judgment on the pleadings.

## BACKGROUND

### I. Medical Evidence

Plaintiff's mother filed an application for supplemental security income ("SSI") on his behalf on June 24, 2011. She alleged that he has been disabled since March 12, 2005. Plaintiff was diagnosed with ADHD on August 9, 2011, when, at age 6, he visited Maimonedes Medical Center and Dr. Kathleen Malloy, a psychiatrist, evaluated him. Dr. Malloy noted he had suffered

through an instance of sexual molestation, academic difficulties, and had behavioral problems at school. Dr. Malloy diagnosed plaintiff with adjustment disorder and ADHD. She assigned plaintiff a global assessment of functioning score of 50 – a score which represents "serious symptoms" or "serious difficulty in social, occupational, or school functioning."

Roughly three months later, on November 7, 2011, plaintiff underwent a one-time examination by Dr. Michael Alexander, at the request of the Social Security Administration ("SSA"). Dr. Alexander opined that plaintiff may have difficulty attending to, following, and understanding all age appropriate directions and completing all age appropriate tasks due to intellectual ability. Dr. Alexander found plaintiff could adequately maintain appropriate social behavior. Dr. Alexander diagnosed plaintiff with ADHD, and opined that his prognosis was fair.

Two days later, plaintiff underwent an intelligence evaluation conducted by Dr. Jemour Maddux. Dr. Maddux found that plaintiff's ability to sustain attention, concentrate, and exert mental control were in the low average range. His verbal reasoning skills were in the low average range as well. However, plaintiff's ability to process simple or routine visual material without making errors was in the high average range. Dr. Maddux also diagnosed plaintiff with ADHD.

On November 17, 2011, state agency medical consultant, Dr. R. Lopez, a psychologist, completed a Child Disability Evaluation Form. Dr. Lopez stated that plaintiff's ADHD was severe, but was not of listing-level severity for 12 continuous months. Dr. Lopez found that plaintiff had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others.

Plaintiff's pediatrician, Dr. Gary Pearlman, completed an evaluation of his impairments on August 10, 2012. His diagnoses included a developmental delay, a psychological issue, and

ADHD. Dr. Pearlman opined that plaintiff had extreme limitations in all areas of attending to and completing tasks. Dr. Pearlman opined that plaintiff was extremely limited in his abilities to get along with authority figures, relate in group situations, communicate with others, and speak intelligibly. He concluded that plaintiff only had moderate limitations in his abilities to get along with children his same age, and cooperate with others and take turns.

Plaintiff met with Dr. Malloy again on October 30, 2012, and November 1, 2012. Dr. Malloy completed a Treatment Plan Update in which she noted that plaintiff had not been seen regularly over the past few months because plaintiff's mother had a difficult time bringing him to the office weekly. Dr. Malloy also noted that plaintiff's mother was ambivalent about whether her son should be taking medication for his ADHD.

In a letter from March 2013 Dr. Malloy stated that plaintiff was diagnosed with ADHD, combined type, and Disruptive Behavior Disorder. Plaintiff was taking Adderall for his ADHD.

In March 2013, plaintiff's school counselor referred him to New York Psychotherapy and Counseling Center ("NYPCC") for individual therapy. Plaintiff was seen for a preadmission screening and his mother stated that he did not do his schoolwork, was disrespectful, and stole from people. His thought processes and content were spontaneous, logical, and appropriate. He was fully oriented and alert; he was able to maintain attention and concentration.

Plaintiff began fairly regular therapy sessions at NYPCC in April 2013, continuing through September 2013. His progress fluctuated almost weekly. Some weeks his mother reported that his medication had helped him remain focused and reduced his hyperactivity. Over a several month span it appeared that plaintiff began to show signs of improvement, including getting along better with his peers, maintaining focus on discrete tasks, and taking his medication consistently. However, plaintiff's mother also reported that plaintiff was continuing to fight with

his older brother, was not behaving appropriately and respectfully, and was struggling to acknowledge responsibility for his actions. At plaintiff's last documented session, his therapist wrote that he was battling feelings of anger and frustration towards his siblings.

## II. Non-Medical Evidence

In April 2011, when plaintiff was in first grade, the New York City Board of Education produced an Individualized Education Program ("IEP") for him. The plan noted that he was able to learn but had difficulty behaving appropriately in the classroom setting. He had shown "improvement in his ability to relate and play cooperatively with his peers . . . he ha[d] built friendships." It was recommended that plaintiff receive integrated co-teaching services in most subjects.

In October 2011, plaintiff's first grade teacher completed a Teacher Questionnaire. She indicated that his major difficulties were in the area of reading and writing but that he was focused in class. The teacher also noted plaintiff needed to be told directions at least twice before he understood the task at hand. However, plaintiff only had slight problems in activities such as focusing, organizing work and materials, completing assignments, and working at a reasonable pace.

In April 2013, an updated IEP was produced. Plaintiff demonstrated an ability to do classwork, but was unwilling to complete his work in class. He struggled with authority, frequently talked back or ignored instructions, and blamed others for his lack of progress and behavior. He struggled to relate to his peers and often said he "had no friends," but "appears to get along well with peers when he wants to." Plaintiff continued to receive integrated co-teaching in most subjects along with counseling once a day for 30 minutes.

Records reflect a mixed bag of progress and setbacks for plaintiff during 2013. For example, in March 2013, his guidance counselor wrote his mother a letter saying that I.R. "appear[ed] to be regressing in the last month." He was unmotivated and unwilling to complete his work, and blamed others for this failure. Plaintiff was intelligent and capable of completing his tasks, but instead spent time "fooling around with peers or playing with things in his desk."

However, a few months later, plaintiff received a glowing report card at the end of the 2012-2013 school year. His teachers stated they were "extremely proud of [I.R.]'s accomplishments." He was approaching grade-level expectations in working and playing cooperatively with others and respecting class and school rules.

Plaintiff's progress slipped over the summer, and in September 2013, his school principal, Ms. Daysi Garcia, completed a Teacher Questionnaire.[1] Ms. Garcia indicated that plaintiff exhibited serious problems in every area of attending and completing tasks and interacting and relating with others. Plaintiff submitted a report card from November 2013 to the Appeals Council. The report card indicated he was not meeting grade-level expectations in most of his subjects.

Plaintiff's mother described his impairments as affecting him fairly severely. She testified that she received frequent calls from his school about his inappropriate and disrespectful behavior. She said he was unable to do his homework without her help, needed help dressing, and could not remember basic tasks like brushing his teeth.

---

[1] Ms. Garcia completed this evaluation instead of plaintiff's second grade teacher who was absent on maternity leave. Ms. Garcia said she saw plaintiff a few times a day.

Plaintiff testified as well. He said he did not like school because the other children were mean to him and called him dumb. He said he got mad at his peers and did not like his teachers because they "lie[d] about everything."

### III.  ALJ's Decision

In the instant case, the ALJ found a marked limitation in the domain of acquiring and using information, less than marked limitations in the areas of attending and completing tasks, interacting and relating to others, and caring for himself. The ALJ found no limitations in the domains of moving about and manipulating objections or health and physical well-being.

## DISCUSSION

Plaintiff raises four points of error: First, the ALJ committed reversible error because he failed to evaluate whether plaintiff suffered from Disruptive Behavior Disorder. Second, plaintiff argues that he had a marked limitation in the domain of interacting and relating with others. Third, plaintiff argues that he also had a marked limitation in attending and completing tasks. Fourth, the ALJ gave improper weight to the applicable evidence.

### I.  Standard of Review

Judicial review of disability benefit determinations is governed by 42 U.S.C. §§ 421(d) and 1383(c)(3) (2006), which incorporate the standards established by 42 U.S.C. § 405(g) (2006). In relevant part, § 405(g) adopts the familiar administrative law review standard of "substantial evidence," i.e., that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive [.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, then her decision must be affirmed. The Supreme Court has defined "substantial

evidence" to mean "more than a mere scintilla[;][i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

To determine whether a child is eligible for benefits on the basis of disability, the SSA has enacted a three-step process. 20 C.F.R. § 416.924(a). First, the Administrative Law Judge ("ALJ") considers whether a child is engaged in "substantial gainful activity." Id. at § 416.924(b). Next, the ALJ determines whether the child has a "medically determinable impairment that is severe." Id. at § 416.924(c). Finally, when an ALJ finds a severe impairment, as he did here, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." 20 C.F.R. § 416.924(c)-(d); Kittles ex rel. Lawton v. Barnhart, 245 F. Supp. 2d 479, 488 (E.D.N.Y. 2003). In the case of a child, if an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and a twelve month durational requirement is satisfied, the

7

child will be deemed disabled. 20 C.F.R. § 416.924(d) (1); see also Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004).

Analysis of functionality is performed by consideration of how a child performs in six areas, which are called "domains," described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. Id. A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the listed domains, 20 C.F.R. § 416.926a(a), or if one domain is marked by an "extreme" limitation. An "extreme limitation" means "more than marked," and consists of an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). This rating is only "give[n] to the worst limitations." Id.; see also Pollard, 377 F.3d at 190.

## II. Analysis

### A. Disruptive Behavior Disorder

Plaintiff claims the ALJ ignored evidence that he suffered from Disruptive Behavior Disorder ("DBS") in addition to ADHD. Plaintiff argues that Dr. Malloy diagnosed him with DBS and the record reflects evidence that he suffered from it. According to plaintiff, if the ALJ felt the record was insufficient to support this diagnosis, he should have ordered further development of the record.

8

An impairment is only a severe impairment if it causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Dr. Malloy was the only medical professional who gave plaintiff a diagnosis of DBS; further, the record is not clear as to the severity of the impairment.

Even if Dr. Malloy was correct in her diagnosis, the ALJ's failure to discuss whether her impairment was severe was harmless error. This is because the ALJ found that plaintiff suffered from a severe impairment in the form of ADHD, and therefore continued to step three of the sequential analysis set forth above. See Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 401 (D. Conn. 2012), aff'd 515 F. App'x 32 (2d Cir. 2013); Stanton v. Astrue, 370 F. App'x 231, 233 n. 1 (2d Cir. 2010). The ALJ clearly considered plaintiff's behavioral issues at step three of the analysis. These issues included the behavior encompassed under DBS, such as difficulty with authority figures.

B. Interacting and Relating With Others

In the domain of interacting and relating with others, the ALJ should consider how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. See 20 C.F.R. § 416.926a(i)(1). Examples of marked or extreme limitations in this domain include: having no close friends, withdrawing from people or being overly anxious or fearful of meeting new people, difficulty communicating with others, difficulty speaking intelligibly or with adequate fluency. These examples, however, can vary on a case-by-case basis and depend on the child's age and developmental stage. Id. § 416.926a(i)(3).

In reaching a determination about whether a claimant is disabled, the ALJ cannot "simply pick and choose from the transcript only such evidence that supports his determination, without

9

affording consideration to evidence supporting the plaintiff's claims." Stewart v. Astrue, No. 10 Civ. 3032, 2012 WL 314867, at *8 (E.D.N.Y. Feb. 1, 2012) (quoting Sutherland v. Barnhart, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004)). But "it is not the district court's role to weigh the credibility of complex, contradictory evidence, or reconsider anew whether the claimant is disabled…" Id. Rather, the district court must ensure that "the ALJ has faithfully fulfilled his legal duties." Id. (internal citations omitted). The substantial evidence standard means that once an ALJ finds facts, they can only be rejected "if a reasonable factfinder would have to conclude otherwise." Brault v. Social Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012).

The ALJ's conclusion that plaintiff did not have a marked limitation in the domain of interacting and relating with others is supported by substantial evidence. The record reflects that the ALJ considered a wide range of information in reaching his decision and did not simply cherry pick evidence that supported his conclusions. The ALJ acknowledged that plaintiff had some limitations in this domain; but they were clearly less than marked.

The ALJ noted that plaintiff did not have a behavioral intervention plan. His first grade teacher generally reported he had no difficulties interacting and relating with others. However, the ALJ also detailed that plaintiff's school counselor, as well as his mother, said that plaintiff could become disrespectful and had issues with his siblings. Plaintiff himself reported that he did not have any friends. Although plaintiff points out that his school made certain accommodations for him, such as daily therapy, these accommodations do not reflect that plaintiff had a serious limitation in interactions and relations with others.

In addition to the evidence highlighted by the ALJ, by the end of the 2012-2013 school year, plaintiff had experienced improvements in his behavior. His report card said "[I.R.] is a

very social young man." He was approaching grade-level expectations in working and playing cooperatively with others and respecting class rules.

The medical records also confirm that plaintiff did not have a marked limitation in this domain. For example, records from his therapy sessions reflect that plaintiff experienced an improvement in his interpersonal skills. Dr. Maddux found that plaintiff could adequately maintain social behavior and interact with peers and adults. Dr. Alexander's assessment in this domain was the same as Dr. Maddux's. The record supports the ALJ's determination that plaintiff did not have a marked limitation in this area.

C. Attending and Completing Tasks

In assessing whether a child has a marked limitation in the domain of attending and completing tasks, the ALJ considers how well the child is able to focus and maintain attention, and how well he begins, carries through and finishes activities, including the pace at which he performs activities and the ease with which he changes them. See 20 C.F.R. § 416.926a(h).

The ALJ acknowledged that plaintiff certainly has some limitations in this domain, but, based on substantial evidence, concluded that there was no marked limitation. The ALJ's conclusion is reasonable based upon evidence in the record. Plaintiff's first grade teacher said he only had slight problems in his abilities to focus long enough to finish an assigned activity or task; carry out multi-step instructions; organize his own things and school materials; complete assignments; work without distracting himself or others; and work at a reasonable pace. Plaintiff highlights that this teacher also said he needed to be told directions at least twice before he understood the task at hand. However, that does not inherently create a marked limitation for his daily functioning.

11

Although Dr. Maddux did note that plaintiff's ability to sustain attention, concentrate, and exert mental control was in the low average range, he ultimately determined he could attend to, follow, and understand age appropriate tasks. Dr. Maddux's findings are corroborated by notes from plaintiff's therapy sessions at NYPCC. These notes show an occasional improvement in plaintiff's ability to sustain attention concentration both at home and at school. In addition to this evidence, Dr. Alexander and Dr. Lopez did not find that plaintiff had a marked limitation in this domain. Dr. Alexander said plaintiff "may" have difficulties completing all age appropriate tasks. But the ALJ weighed the evidence and determined that on the whole, plaintiff did not have a marked limitation. Plaintiff is essentially asking this court to second guess the credibility assessments and weighing of the evidence undertaken by the ALJ – which is not this Court's role.

D. Weight of the Evidence

Plaintiff also argues that the ALJ did not properly weigh all applicable evidence in reaching his conclusion. Specifically, plaintiff argues that the ALJ gave great weight to the non-treating medical opinions of Dr. Maddux and Dr. Lopez without any explanation, ignored the report submitted by plaintiff's principal, and substituted his own judgment in place of the evidence in the record.

Although the ALJ did not explain why he accorded these opinions great weight, it is a harmless error. Agency reconsideration is unnecessary when "application of the correct legal principles to the record could lead [only to the same] conclusion." Brogan-Dawley v. Astrue, 484 F. App'x 632, 634 (2d Cir. 2012). An "ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (citing Mongeur v.

Heckler, 722 F.2d 1033 (2d Cir. 1983)).  An ALJ is free to accord weight to the opinions from non-treating, but examining sources if supported by medical evidence of record.  See 20 C.F.R. 416.927(c)(1).

Dr. Maddux and Dr. Lopez both provided well-reasoned opinions corroborated by other physicians as well as the medical evidence of record.  Although the ALJ was faced with conflicting opinions, it is precisely the role of the ALJ to resolve these conflicting opinions.  See Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 112 (2d Cir. 2012).

Plaintiff's principal, Ms. Garcia, provided an evaluation of plaintiff in September 2013.  Plaintiff argues that her opinion should have been accorded more weight.  However, the ALJ presumably chose not to credit her opinion because she was not as familiar with plaintiff as other individuals who assessed his capabilities.  Ms. Garcia said she saw plaintiff a few times a day; in contrast, his teachers saw him for longer periods.  Ms. Garcia's opinions were also contradicted by plaintiff's 2012-2013 report card as well as the 2013 IEP.

Finally, plaintiff alleges that the ALJ substituted his opinion in the place of the medical evidence.  Specifically, plaintiff objects to the conclusion that his difficulties are due to his mother's non-compliance with the prescribed treatments and not his medical condition.  The ALJ highlighted statements from plaintiff's mother about difficulties she had in enforcing punishments and following through on rules.  The ALJ's decision was not based solely upon plaintiff's failure to comply with his medication regime.  Instead, it was based on his evaluation of the record as a whole, including medical evidence and educational records.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted, and the complaint is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

 _____
 U.S.D.J.

Dated: Brooklyn, New York
 April 25, 2016